## Asher v. Asher.

June 2, 1939.

M. C. Begley for appellant.

L. D. Lewis for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Reversing.

In 1935, A. J. Asher, the plaintiff below, executed a deed conveying to his son, W. L. Asher, the defendant below, a tract of land in Leslie County, and in 1937, he executed a second deed conveying other lands in that county to this same son. He brought this suit in equity against his son alleging these deeds were without consideration, and that simultaneously with the delivery of each, the son executed a writing to the father agreeing to reconvey the property upon his demand and the son has refused to reconvey the lands upon plaintiff's demand. The answer denied the deeds were not supported by consideration and further denied the execution of the written contracts by the son agreeing to reconvey the properties to the father. In effect, this is a suit to compel the son to specifically perform his contract and to reconvey the properties to his father. The chancellor adjudged the plaintiff to be entitled to the relief sought and the defendant appeals.

When depositions were taken it was brought out on the cross examination of the plaintiff that he executed the two deeds to the defendant in order to prevent the levying of an execution on the properties therein transferred, which execution had been issued upon a judgment his granddaughter had obtained against him. The defendant takes the position in his brief that as the plaintiff executed the two deeds to perpetrate a fraud upon his creditor, equity will not come to his relief but will leave him where it found him. The plaintiff's position is that his grand-daughter has decided not to enforce the collection of the judgment against him and that she was not defrauded by these conveyances, the defendant should be compelled to reconvey the properties. The plaintiff further contends that defendant did not affirmatively plead the conveyances were executed in fraud of creditors, therefore, no proof that the conveyances were fraudulent is competent in the absence of such an allegation in the answer.

Where specific performance is sought of a contract to reconvey property which has been transferred by a

fraudulent conveyance, 12 R. C. L. 612, Section 121, says:

"Fraudulent conveyances are sometimes accompanied by a specific agreement on the part of the grantee to reconvey, and the question arises whether the fraud will defeat an action for specific performance in such case. Though there is authority to the contrary, on the theory that the transaction is merely voidable at the option of those defrauded, and that the parties themselves will not be allowed to plead their own fraud, the decided weight of authority is that ordinarily a court of equity will not lend its aid to enforce the specific performance of a contract to reconvey property conveyed in fraud of the grantor's creditors, and the heirs of the fraudulent grantor stand in no better position in this respect than the grantor himself. If, however, the parties are not in pari delicto, such agreement to recover is often considered as creating a trust which will be enforced."

Specific performance is not a remedy which is granted as a matter of right, but lies within the sound discretion of the chancellor under the established principles and practices of equity jurisprudence. Relief in equity is conditioned on the transaction being free from fraud or illegal or inequitable conduct, as they will ever defeat the remedy of specific performance. Robenson v. Yann, 224 Ky. 56, 5 S. W. (2d) 271. This Robenson case cites Everett v. Williams, 9 L. Q. B. 197, where a bill which was filed by two highwaymen to settle a partnership in outlawry resulted in a judgment condemning the bill for scandal, punishing counsel for contempt, and inflicting the death penalty on both litigants. This Everett case is often cited as an illustration that illegal contracts have no standing in courts. See 13 C. J. 508, Section 458, and 13 C. J. 492, Section 440.

In a long and unbroken line of cases this court has refused relief to one, who has created by his fraudulent acts the situation from which he asks to be extricated. We will cite only a few of these cases. Coleman v. Coleman, 147 Ky. 383, 144 S. W. 1, 39 L. R. A., N. S., 193; Shamo v. Benjamin's Admr., 155 Ky. 373, 159 S. W. 798; Carson v. Beliles, 121 Ky. 294, 89 S. W. 208, 28 Ky. Law Rep. 272, 1 L. R. A., N. S., 1007; Ballance v. Ballance, 213 Ky. 73, 280 S. W. 473; Stiefvater v. Stiefvater, 246 Ky. 646, 53 S. W. (2d) 926; Damron v. Call,

225 Ky. 150, 7 S. W. (2d) 1069; Coffey v. Coffey, 232 Ky. 179, 22 S. W. (2d) 589.

It was written in Harper v. Harper, 85 Ky. 160, 161, 3 S. W. 5, 7 Am. St. Rep. 583, that where a person was frightened or intimidated into making a fraudulent conveyance, equity will grant relief since the parties were not in pari delicto, and this case has been followed down to the present. Carpenter v. Arnett, 265 Ky. 246, 96 S. W. (2d) 693. But the case before us does not come within the exception of the rule stated in the Harper case, as A. J. Asher conceived and constructed the fraud he intended to perpetrate upon his creditor. It is of no help to plaintiff that his contemplated fraud did not have actual effect. He intended to defraud his creditor and this besmeared the transaction with moral turpitude. Shamo v. Benjamin's Adm'r, supra.

Plaintiff argues it was incumbent upon defendant to plead the two deeds executed to defendant were fraudulent, and not having done so, no evidence was admissible to show these conveyances were fraudulent. It is true an affirmative defense must be pleaded and where defendant fails to do so, he cannot complain when a court refuses to admit evidence on such defense. Transylvania Casualty Insurance Company v. Paritz, 184 Ky. 807, 213 S. W. 195; Tandy et al. v. Wolfe, 270 Ky. 556, 110 S. W. (2d) 277. But it does not take an affirmative defense to defeat plaintiff because the fraud he attempted to perpetrate on his creditor by conveying these properties to his son deprives him of any standing in a court of equity. By his own iniquitous acts the plaintiff has pitched himself into the mire and he cannot now call upon the clean hand of equity to extricate him.

The judgment is reversed, with directions to the chancellor to dismiss the petition.